John D. Denison, Appellant, v. Brotherhood of American Yeomen et al., Appellees.

**INJUNCTION:** Interference with De Facto Officer. Injunction will
1    lie in favor of one who is in possession of an office and who is at

least a *de facto* incumbent thereof, to restrain *interference* with the discharge of the duties of the office, until the right to the office may be determined by quo warranto.

**INSURANCE: Fraternal Beneficiary Society—Officer (?) or Employee** (?) The incumbent of an official position in the organization and management of a fraternal beneficiary society who is designated by by-laws as a ''supreme officer'' is not a mere ''employee,'' though appointed by the board of directors.

**INJUNCTION: Directory Provision in re Entry on Calendar.** The statutory requirement that temporary injunctions shall be granted, in term time, only by an order entered upon the calendar *after* the petition is filed and so entered, is *directory*.

*Appeal from Polk District Court.*—LAWRENCE DE GRAFF, Judge.

MAY 16, 1921.

ACTION in equity to enjoin the defendants from interfering with the plaintiff's possession of the office of general attorney of the Brotherhood of American Yeomen. A temporary injunction was granted, which, on motion of the defendants, was dissolved. Plaintiff appeals from the order dissolving the temporary injunction.—*Reversed and remanded.*

*Guy A. Miller* and *John D. Denison,* for appellant.

*Miller, Kelly, Shuttleworth & Seeburger,* for appellees.

FAVILLE, J.—I. The appellant's petition alleges that the appellee Brotherhood of American Yeomen is a fraternal beneficiary association, duly organized under the laws of the state of Iowa; that the other appellees are the board of directors and other officers of said association; that the appellant is the general attorney of the said association, and was appointed as such in the month of June, 1917, by the board of directors; and that he qualified and entered upon the duties of said office. The petition sets out the following by-laws of the association:

''Sec. 14. The supreme officers of this association shall be Grand Foreman, Grand Master of Ceremonies, Chief Corres-

pondent, Grand Master of Accounts, Chief Medical Director, Chief Overseer, Chief Sentinel, Chaplain, General Attorney, and Editor of the Yeomen Shield. All supreme officers except the Chief Medical Director, General Attorney, and Editor of the Yeomen Shield, shall be elected by the supreme conclave, and shall hold their respective offices until the next regular succeeding conclave, or until their successors are chosen and qualified.

"Sec. 37. The board of directors shall appoint a general attorney, who shall have charge, under the board of directors, of all legal matters pertaining to this association. He shall give a surety bond in the sum of $3,000. He shall hold office until his successor is appointed and qualified.

"Sec. 42. It shall be the duty of the board of directors to remove from office any supreme officer, or any officer appointed by said board, for immoral conduct, for malfeasance in office or inattention to official duties, after a fair trial before the said board of directors, upon due notice thereof, upon charges preferred against such officer. A two-thirds vote of said board of directors shall be required to remove such officer."

The petition alleges that, on or about the first day of July, A. D. 1920, the board of directors passed a resolution as follows:

"Resolved that the employment of John D. Denison as general attorney of the association is terminated as of this date."

It is alleged that, after passing said resolution, the said board of directors appointed the appellee A. H. Hoffman as general attorney; that appellant has reason to believe that said Hoffman will attempt to take possession of files, cases, briefs, claims, and all things pertaining to said office of general attorney, and deprive the appellant by fraud of the honors, emoluments, functions, and properties of said office. The petition recites that the salary of the appellant as general attorney was $6,000 per year, payable monthly, together with all necessary traveling and hotel expenses. It is alleged that the appellant, since June, 1917, has had and now has possession of the files, briefs, arguments, cases, claims, and all matters pertaining to the office of general attorney of said association, and has enjoyed the dignities, honors, and emoluments, and has possessed the powers and functions and performed the duties pertaining to said office. It

is alleged that the appellees have conspired to fraudulently deprive the appellant of the possession of said office and all the matters and things connected therewith, and to refuse to issue the necessary orders for the payment of his salary and expense account. It is prayed that the appellees be enjoined from interfering in any manner with the properties pertaining to said office, and from failing to allow the proper expense account of appellant; and that the appellee Hoffman be restrained from exercising any of the functions of the office of general attorney until such time as the disputed right to the title to the said office of general attorney shall be judicially determined, after proper proceedings in due course of law.

Upon presentation to one of the judges of the district court, an order for the allowance of a temporary writ of injunction was entered, and, bond being furnished, as provided in said order, a temporary writ of injunction was duly issued. Thereafter, the appellees filed their motion to dissolve said temporary injunction on the ground that the court had no authority to issue an injunction because the same is not a proper remedy under the law, and that the appellant's action is in quo warranto. It is also alleged in said motion that the appellant's right of action, if any, is for breach of his contract of employment, and that the appellant's employment was terminated prior to the filing of the petition; that a successor to the appellant had been appointed by the board of directors; that the writ of injunction was issued in violation of the statute, because signed by a judge before said petition was filed with the clerk of the district court, when the same had not been entered upon the court calendar for the term; and that said injunction was improperly and improvidently issued. Thereafter, the court entered an order sustaining said motion, and vacating and setting aside the said temporary writ of injunction. From said order this appeal is prosecuted to this court; and, on application to the chief justice of this court, a restraining order was issued, restraining the appellees, pending this appeal, from interfering in any way with the appellant in his conduct and possession of the said office of general attorney of the Brotherhood of American Yeomen, pending the institution of judicial proceeding to determine the disputed rights to said office.

The arguments of counsel for both appellant and appellees have taken a very wide range in the presentation of this appeal. As we view it, the ultimate question for our consideration is whether or not the appellant was entitled to a temporary writ of injunction restraining the appellees from interfering with his possession of the office of general attorney of the Brotherhood of American Yeomen, until the title and right to said office should be determined by proper judicial proceedings. There has been, as yet, no trial whatever on the merits of the matters presented in the appellant's petition. No answer has yet been filed thereto, and, for the purpose of this appeal, we must assume that all of the matters alleged in the appellant's petition are true. From said petition it appears affirmatively that the appellant was the duly appointed general attorney of the Brotherhood of American Yeomen. Under the by-laws of said association, as pleaded, he was a supreme officer of said association. It is the contention of the appellees that the appellant was merely an employee of the said association and that he was subject to discharge at any time by the board of directors. The petition, however, controverts this. It is alleged, and for the purpose of this hearing we must assume it to be true, that the appellant was one of the supreme officers of said association, and was appointed for a term of four years, or until the next supreme conclave of said association, in June, 1921; and also that no charges have been preferred against the appellant, and no hearing has been had in regard to his removal from office.

We are not called upon, in this proceeding, to determine the disputed question of the right of the appellant to retain the office of general attorney of the association. We hold that, under the allegations of the petition, the appellant was an officer of the said association, and not a mere employee. What shall be determined to be the status of the appellant upon a final hearing and trial of the cause is not now before us. The allegations of his petition are sufficient to support his contention that he was at least a *de facto* officer of the association, and not a mere employee. He is seeking by this action to maintain himself in the possession of said office and the matters and things necessarily pertaining thereto until such time as, by proper legal proceedings,

2. INSURANCE: fraternal beneficiary society: officer (?) or employee (?)

it may be determined whether or not he is legally entitled to retain said office.

It is strenuously urged in behalf of the appellees that this cause is merely an action to determine the right to hold a certain office, as between two contestants therefor; and that such an action can only be maintained by proceeding in quo warranto. Such, however, is not the situation. The appellant herein is not seeking by this petition to have a court of equity determine the ultimate question of whether the appellant or the appellee Hoffman is entitled to the possession of the office of general attorney of the association. The appellant alleges by his petition that he is at least a *de facto* officer of the association, in possession of its property as such officer, and charged with the duties and responsibilities of maintaining said office. The petition charges that the appellees, by fraud and conspiracy, are seeking to oust him from said office, and are claiming that another has the right thereto. He is only asking in this case that the injunctive power of a court of equity be exercised, to interpose between him and the contestants and maintain the *status quo* until the legal right of the parties to the possession of said office shall be determined by proper proceedings. In other words, his petition charges that he was lawfully placed in possession of this office and of all the matters and things pertaining thereto, and that he has actually taken possession of the office and of the things necessary to its proper conduct. He therefore is a *de facto* officer, in possession of and exercising the functions pertaining to the office. His petition alleges that, through fraud and conspiracy, one who is alleged to be an usurper is seeking to wrest his office and its appurtenances from his possession. He asks a court of equity to interfere, and to protect him in the possession of the office and its appurtenances against what he charges to be an unlawful and fraudulent attempt to usurp the office, until such time as it shall be legally determined by proper proceedings whether he or the other person is entitled, under the rules of said association and under the laws of the state, to the possession of said office.

The temporary writ of injunction which was dissolved was issued for this purpose, and the restraining order was issued from this court for the express purpose of maintaining the

*status quo* until the respective claims to said office could be determined in a proper proceeding.

That a court of equity has the power, upon such a showing as was made in the appellant's petition, to restrain an alleged unwarranted interference with an office of which one is alleged to be in lawful possession cannot, we believe, well be questioned. It must be remembered that the writ of injunction sought in this action is not to oust one person from an office and place another therein, nor is it to determine, as between two claimants, which is lawfully entitled to the possession. It is a case where one person, alleged to have been lawfully placed in possession of an office, and retaining its appurtenances, resorts to a court of equity, that he may not be, as he claims, unlawfully and fraudulently ousted therefrom by one claiming the right thereto, until the rights and claims of said parties shall be adjudicated in a proper proceeding and before a proper tribunal. The appellant's petition, as we view it, brings his case squarely within the well-recognized power of a court of equity in cases of this kind.

In *State v. Alexander*, 107 Iowa 177, we said:

"It is the general rule that courts of equity have no jurisdiction to determine the respective rights of claimants to a public office, for the reason that the remedy at law is adequate; and - it is also the general rule that an injunction will not lie to restrain a person acting as a public officer from exercising the functions pertaining to the office on the ground that he is not entitled to the office. ` [Citing cases.]''

We further said:

"It has been held that an injunction will lie in favor of the incumbent of an office, to protect him in the discharge of the duties of the office against an adverse claimant, until the latter shall have established his right to the office by an action or proceeding at law. *Guillotte v. Poincy*, 41 La. Ann. 333 (6 So. 507); *Reemelin v. Mosby*, 47 Ohio St. 570 (26 N. E. 717); *Armijo v. Baca*, 3 N. M. (Gild.) 490 (6 Pac. 938).''

We apply this language and these rules to the instant case. We hold that an injunction will lie in favor of the incumbent of an office, to protect him in the discharge of the duties of the office against an adverse claimant, until the latter shall have es-

tablished the right to the office by an action or proceeding at law. And in the instant case, applying this rule, the appellant's petition affirmatively shows that he is the incumbent of an office, and that an adverse claim is made thereto, as he alleges, as a result of fraud and conspiracy. Whether this be true or not, he has a right to an injunction to protect him in the discharge of the duties of his office, against an adverse claimant thereto, until the said claimant shall have established his right to the office by an action or proceeding at law.

In *Schmidt v. Pritchard,* 135 Iowa 240, we said:

"It is the general, if not universal, rule that a court of equity has no power or jurisdiction to entertain a bill for the purpose of reviewing a corporation election, much less to oust parties in possession who claim to have been elected. But where a palpable fraud has been practiced in the election, and usurpers are about to take possession of the property, in violation of all justice, courts of equity will sometimes interfere to prevent them from doing so. *People v. Railroad,* 57 N. Y. 161; *Perry v. Co.,* 93 Ala. 364 (9 So. 217); *New England Co. v. Phillips,* 141 Mass. 535 (6 N. E. 534); *Owen v. Whitaker,* 20 N. J. Eq. 122; *Johnston v. Jones,* 23 N. J. Eq. 216; *Humboldt v. Stevens,* 34 Neb. 528 (52 N. W. 568, 33 Am. St. Rep. 654). The rule seems to be the same whether the officer is of a public or of a private corporation. *State v. Alexander,* 107 Iowa 182."

We recognized the same rule in *Vette v. Byington,* 132 Iowa 487, wherein we said:

"It has been held that, where one is in possession of an office, either *de jure* or otherwise, equity will restrain interference with the exercise of the duties thereof."

There is a clear distinction in the authorities between the situation where an officer in possession of an office is seeking by injunctive process to restrain interference with such possession, and the case where one out of office is seeking by injunction to oust an incumbent and obtain possession for himself. In the first instance, equity will interfere, and retain the possession of the incumbent lawfully in possession until the right to the office has been determined in proper proceeding. In the latter case, equity will not interfere at the instance of one who is not in possession and who seeks, by injunctive process, to establish his

right to an office and obtain possession thereof. The courts generally recognize the rule we have announced.

In *Ekern v. McGovern*, 154 Wis. 157 (142 N. W. 595), the Supreme Court of Wisconsin says:

"It may be safely affirmed that, in general, an officer *de facto* in possession is entitled to equitable interference to prevent forcible disturbance thereof other than in judicial proceedings."

A large number of authorities are cited in support of the proposition. *School Dist. v. Weise*, 77 Minn. 167 (79 N. W. 668); *State v. Superior Court*, 17 Wash. 12 (48 Pac. 741, 61 Am. St. 893); *Parsons v. Durand*, 150 Ind. 203 (49 N. E. 1047); *Hollar v. Cornett*, 144 Ky. 420 (138 S. W. 298); *Stenglein v. Saginaw Cir. Judge*, 128 Mich. 440 (87 N. W. 449); *Kucera v. Allen*, 103 Neb. 221 (170 N. W. 890); *Arnold v. Hilts*, 52 Colo. 391 (121 Pac. 753); *Armijo v. Baca*, 3 Gild. (N. M.) 490 (6 Pac. 938); *Reemelin v. Mosby*, 47 O. St. 570 (26 N. E. 717); *Poyntz v. Shackelford*, 107 Ky. 546 (54 S. W. 855); *Callaghan v. McGown*, (Tex. Civ. App.) 90 S. W. 319; *Brady v. Sweetland*, 13 Kan. 41; *Landes v. Walls*, 160 Ind. 216 (66 N. E. 679); *Hotchkiss v. Keck*, 86 Neb. 322 (125 N. W. 509); *De Zavala v. Daughters of R. of T.*, 58 Tex. Civ. App. 19 (124 S. W. 160).

In 2 High on Injunctions (2d Ed.), Section 1315, it is said:

"While courts of equity uniformly refuse to interfere by the exercise of their preventive jurisdiction to determine questions relating to the title to office, they frequently recognize and protect the possession of officers *de facto*, by refusing to interfere with their possession in behalf of adverse claimants, or, if necessary, by protecting such possession against the interference of such claimants. * * * And the granting of an injunction in such case in no manner determines the question of title involved, but merely goes to the protection of the present incumbents against the interference of claimants out of possession, and whose title is not yet established."

In *Guillotte v. Poincy*, 41 La. Ann. 333 (6 So. 507), the Supreme Court of Louisiana quotes with approval the citation from High on Injunctions and says:

"This doctrine is in the interest of social peace and order,

and conforms to the object and policy of the law in all remedial provisions for the settlement of disputed rights, which always respect and ·maintain the *status quo* until the controversy shall be settled in orderly course of judicial procedure.''

It is urged by the appellees that an action in equity, aided by injunction, will not lie to try title to an office, and that we have so declared. We are ·cited to *Cochran v.*

3. INJUNCTION: directory provision *in re* entry on calendar. *McCleary,* 22 Iowa 75; *District Township v. Barrett,* 47 Iowa 110; *District Township v. Myles,* 109 Iowa 541; *State v. Van Beek,* 87 Iowa 569; *Harvey v. Kirton,* 182 Iowa 973, 976.

It is unnecessary for us to review all of these cases, as part of our earlier decisions were considered and discussed by us in the case of *Harvey v. Kirton,* supra. We have announced the proposition that a court of equity will not try to determine the question of the right to an office, as between two claimants therefor. A plain, speedy, and adequate remedy is provided by law, and that remedy must be resorted to and that method of procedure must be followed, except where it is changed by statute. We have no disposition to in any way depart from this well-recognized and established rule. Applying it to the facts of the instant case, we hold that a court of equity has no right to determine the question of the legal right to the office of general attorney of the appellee association. There is a plain, speedy, and adequate remedy at law, by which the rights of the parties can and must be determined. But in so holding, it does not necessarily follow that a court of equity cannot grant the remedy of injunction, to maintain the *status quo,* as between two such adverse claimants, during the period of time pending the legal determination of the right of the respective parties to the office in question. As we view it, that is all that the temporary injunction granted in this case attempts to do, and that is the limit of the provisions of the restraining order issued by this court. Here we have a situation where no trial has been held, no answer has been filed, and we must take the allegations of the appellant's petition as being true. It appears therefrom that the appellant was the duly appointed general attorney of the appellee association; that, as such officer, he was one of the supreme officers of said association; that he has in his pos-

session and under his control, as such officer, all of the cases, files, briefs, and other matters pertaining to such office, and is charged with the care of the same. The petition alleges, and for the purpose of this case we must assume it to be true, that the appellees have unlawfully and fraudulently entered into a conspiracy to deprive him of the said office and of the matters intrusted to him as such officer; and that they have no right or authority so to do. He prays, not that a court of equity shall interfere, and determine the question as to whether he or the adverse claimant is legally entitled to the office, but only that he may be retained in the peaceable possession of the office, against what he alleges are the unlawful and fraudulent claims of an usurper, until such time as it shall be legally determined which of said parties is legally entitled to it. A court of equity will not, in such a proceeding, try and determine the ultimate and final question as to which of said parties, under the rules of said association, is legally entitled to hold said office. The courts of law are open for the determination of that question, and the remedy provided by quo warranto is speedy, adequate, and complete. But, while that is true, a court of equity has the undoubted power, upon such showing as is made in the instant case,—which is not controverted, and which must be assumed to be true,—to exercise its power by injunction to maintain the *status quo* until there shall be a proper determination of legal rights.

By amendment to his prayer, the appellant asks no more than this, and to this extent the appellant was entitled to injunctive relief. The appellees' motion for a dissolution of the injunction on the grounds set forth in said motion should have been overruled. An application for a modification of the terms of the injunction as originally granted, to conform strictly to the amended prayer of the appellant's petition, would have been proper; but no such application was presented to the lower court.

II. It is urged by the appellees that the injunction should have been dissolved on the ground that the petition for injunction was presented to the judge granting the same during term time, and that the order allowing the temporary injunction was granted by the judge without filing the petition with the clerk and entering it upon the court calendar of the term,

and without the entry upon the court calendar of the order granting the same.

It appears from the abstract that the order for the temporary injunction was granted by the judge of the district court of Polk County, Iowa, on the first day of July, 1920. It appears from an affidavit that the May term of said district court had not then been finally adjourned. We take it from the record that the petition for injunction was presented to the judge of the district court at his home, and at a time when court was not actually in session; that the petition was not filed in the clerk's office until after the judge had entered the order allowing the issuance of the writ; and that the order was not entered upon the court calendar for the May term.

Code Section 4359 provides:

"* * * nor shall any temporary writ of injunction be allowed by any judge during term time, except the petition therefor shall be first filed with the clerk and entered upon the court calendar of that term, and the order allowing the same, if granted, shall be entered therein."

It is the contention of the appellees that this provision of the statute is mandatory, and that the words "term time" cover the entire period from the convening of court for the term until its final adjournment *sine die*. If appellees' contention is correct, then, if the district court should adjourn for any length of. time "during term time," a judge could not issue a temporary writ of injunction, except the petition therefor was first filed with the clerk and entered upon the court calendar, and the order allowing the same, if granted, should also be entered on the court calendar. In country districts, it not infrequently happens that, during "term time," the trial judge adjourns the court for several days; and he may be at a distant point, holding court, or otherwise engaged in the performance of his duties. If the rule contended for by appellees is strictly applied, before a temporary injunction could be granted, no matter how great the emergency, the petition would have to be first filed with the clerk and entered upon the court calendar; and the order allowing the same, if granted, would have to be entered upon the court calendar. No one has any authority to make entries on the court calendar except the court or the judge

thereof, and a strict application of this rule would require, under the situation referred to, that the trial judge should make the entry of the granting of the writ upon the court calendar, before it would be of any validity.

We have heretofore had occasion to consider what constitutes "term time" and what is "vacation" of the court. *State v. Van Auken,* 98 Iowa 674; *Marengo Sav. Bank v. Byington,* 135 Iowa 151; *Jones v. McClaughry,* 169 Iowa 281. In *Thompson v. Benepe,* 67 Iowa 79, we had under consideration a case where an injunction was issued under the statute as it then stood. In that case, the order for an injunction was granted by the judge during the period of term time, but not while the court was actually in session. We said:

"As the rights of the defendants are precisely the same, whether the allowance is made by the court or judge, it is difficult to see how they were in any respect prejudiced, if the allowance was made during the term time, or while the court was actually in session. * * * When the subject-matter is considered, as well as the usual purposes for which an injunction is sought as a protection against wrong or the invasion of legal rights, we think the word 'vacation,' as used in the statute, should be construed to mean such time as the court is not actually in session."

In *Jones v. McClaughry,* supra, we also discussed the question of entries in the judge's or court's calendar. We said:

"The minutes on the judge's calendar form no part of the record, and do not constitute a judgment. *Traer Bros. v. Whitman,* 56 Iowa 443; *Miller v. Wolf,* 63 Iowa 233. They are mere directions to the clerk, and of no more significance than if orally made to him. *State v. Manley,* 63 Iowa 344; *Case v. Plato,* 54 Iowa 64; *Burroughs v. Ellis,* 76 Iowa 640."

It is a not infrequent custom for the judges of the district courts of this state to adjourn the court for certain periods of time. During such intervals, the "term" of court has not finally closed. Court is not in session. There is a "vacation," but "the term" has not been finally ended by an adjournment *sine die.* Under such conditions and circumstances, if a temporary writ of injunction is desired, it has been an almost universal custom among the judges and lawyers of this state that the application should be presented to a district judge, and the

order for the issuance of a writ of temporary injunction indorsed thereon. To require that, under such conditions, the judge would be compelled to journey to the county seat, and enter an order on the court calendar of the granting of the writ, merely because "the term" had not been finally adjourned, was never intended by the legislature in the enactment of the statute. We hold the statute to be directory only, and not mandatory.

No other matters presented require our consideration. It follows that the order of the district court dissolving the injunction granted in this cause must be reversed, and the cause remanded to the district court for such further proceedings, if any, as to the parties may seem advisable, and as may be in accordance with this opinion.—*Reversed and remanded.*

Evans, C. J., Stevens and Arthur, JJ., concur.

De Graff, J., takes no part.